Ian E. Silverberg, Esq., P.C.
Nevada Bar #5501
227 Clay Street
Reno, NV 89501
(775) 348-1836
(775) 348-6331
Attorney for Plaintiff
ALI AMIR ABDUL AZIZ

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALI AMIR ABDUL-AZIZ,<br><br>         Plaintiff,<br><br>vs.<br><br>ELDORADO RESORTS, LLC., a Nevada Limited Liability Corporation, THE CITY OF RENO POLICE DEPARTMENT, and KELLE HARTER, individually and in her official capacity,<br><br>         Defendants.<br>_____/ | Case No.<br><br>**COMPLAINT** |

COMES NOW the Plaintiff, ALI AMIR ABDUL-AZIZ, by and through Counsel, Ian E. Silverberg, Esq., and for causes of action against the Defendants, and each of them, does hereby allege the following:

### JURISDICTIONAL ALLEGATIONS

1.   Plaintiff at all times relevant herein was and is an adult competent black African-American Muslim male who invokes the Court's Federal Question jurisdiction pursuant to 42 USC § 1981, 42 USC § 1981a, 42 USC §1983, and related State law causes of action. The Court's pendent jurisdiction is invoked regarding the State law causes of action.

///

///

2. The Defendant, ELDORADO RESORTS, LLC., is a Nevada Limited Liability Corporation doing business in the Sate of Nevada, County of Washoe, City of Reno, doing business as the Eldorado Hotel and Casino.

3. The Defendant, CITY OF RENO POLICE DEPARTMENT is a municipality located in the State of Nevada, County of Washoe.

4. The Defendant, KELLE HARTER, at times relevant herein, was a police officer for the city of Reno Police Department and is sued in her individual and official capacity.

5. The acts and omissions complained of herein occurred in the County of Washoe, City of Reno, making venue proper in the above Court.

## FACTUAL ALLEGATIONS

6. On or about September 16, 2012, the Plaintiff was a patron at the Eldorado Hotel and Casino, located in Reno, Nevada, which is the dba for Defendant ELDORADO RESORTS, LLC. (Hereafter referred to as "Defendant Eldorado")

7. The Plaintiff had frequented the Eldorado Hotel and Casino on multiple occasions in the past; in fact, the Plaintiff's company had an "Execuline Corporate Account" and was an "Execuline Member" with Defendant Eldorado, which entitled the Plaintiff and his company to special room rates and other incentives for those, such as the Plaintiff, who sign up for these incentives and conduct substantial business with Defendant Eldorado.

8. The Plaintiff had his laptop with him and a Starbucks cup and enjoying a gelato he had just purchased from inside the Eldorado Hotel and Casino, and he was located in the Sports Book watching his favorite football team, the Pittsburgh Steelers, playing football on the big screen televisions, and he had noise cancelling earphones in his ears listening to music.

9. The Plaintiff was not engaged in any unlawful or provocative activities and was simply enjoying his gelato and watching the football game in the Sports Book of the Defendant Eldorado.

///

///

10. At the end of the third quarter of the football game, the Plaintiff observed a large collection of security guards, who Plaintiff is informed and believes and thereupon alleges, were employees of Defendant Eldorado, or were otherwise servants and/or acting on behalf of and at direction of Defendant Eldorado.

11. Plaintiff continued watching the football game and at that time had no reason to believe this large crowd of security guards had any interest in the Plaintiff.

12. Plaintiff was then approached by Cody Wilson, one of the security guards, who demanded in a stern voice and aggressive manner to see the Plaintiff's identification.

13. Plaintiff, who is a former Executive State Board Member of Florida's ACLU, removed the earphones from his ears and responded by asking this security guard if he had any reasonable articulate suspicion to demand the Plaintiff's identification, to which this security guard responded that he is allowed to ask for the Plaintiff's identification and that he needed to see the Plaintiff's identification, even though the Plaintiff had done nothing wrong or improper or provocative, and at the time was an Execuline Corporate Account member of the Eldorado, and thus was an invitee on the premisses and had every right under the law to be present at the Eldorado at that time.

14. Plaintiff then asked the security guard if he were a suspect in a criminal investigation or whether he had committed a felony of any kind and again questioned him as to why he needed to see the Plaintiff's identification. Cody Wilson stated that his supervisor needs to see the Plaintiff's identification, to which the Plaintiff responded, "perhaps you should get your supervisor."

15. The security guard quickly returned to the Plaintiff with another security guard, Stephen Foster, who appeared to have some supervisory capacity and demanded in a threatening manner to see the Plaintiff's identification.

16. Plaintiff asked for the name of this supervisor and asked him whether he had a reasonable articulate suspicion to demand his identification.

17. The supervisor refused to give his name and asked whether or not the Plaintiff had identification.

18. Plaintiff responded that he did not have identification and again asked if he was a suspect in a criminal investigation.

19. This supervisor responded that the Plaintiff "looked like" someone he had a problem with at the casino on a prior occasion.

20. Plaintiff responded that it is not a crime to look like someone and asked if there was any complaint about a black Muslim man committing crimes in the Eldorado wearing a Pittsburgh Steeler's jersey. Plaintiff is African-American and Muslim and was wearing a "kufi," which is a traditional Islamic prayer cap, which the Eldorado Security officer, Cody Wilson, referred to as a beanie in his official report.

21. Supervisor of security, Stephen foster, then stated in a very aggressive manner that if the Plaintiff did not have identification, he would need to leave the premises.

22. Plaintiff stood up and again asked if he had committed a crime and inquired as to why other patrons, none of whom were African-American and wearing a traditional Islamic prayer cap, were not being asked for their identifications. The Plaintiff gathered his belongings, consisting of a Starbucks cup in one hand, and his laptop in the other.

23. Plaintiff then informed both security guards that he is an "execuline member" of the Defendant Eldorado and that he has a corporate account with the Defendant Eldorado. Plaintiff suggested that they walk to the front desk, as many front desk employees would have been able to identify the Plaintiff as a frequent patron of the Defendant Eldorado.

24. Plaintiff began to walk towards the escalator that lead to the front desk, at which time the supervising security officer Steven Foster, chest-bumped the Plaintiff while his hands were full. Plaintiff instructed the security officer not to touch him.

///
///
///
///

25. Plaintiff, in an effort to avoid a physical confrontation with Eldorado security, told Steven Foster not to touch him and walked towards the nearest exit, with the two security guards following him. Upon approaching the exit as directed, and in full compliance with the directives of Eldorado security, Plaintiff saw a group of additional security guards by the exit he was directed to use.

26. Even though the Plaintiff was fully complying with security and about to reach the exit, the security supervisor stated that if the Plaintiff is not out of the building in five seconds, he would be arrested. When Plaintiff inquired for what he would be arrested, the security guard stated for trespassing.

27. Plaintiff, while still walking toward the exit as instructed by Defendant Eldorado's security officers, told them that he has never been given a trespass warning by the property owner, indicated that he is an Execuline member, his company has a Corporate Account here, that he purchased Gelato at the Eldorado, which means he conducted business at the Eldorado, that he is a customer and definitely not trespassing.

28. Although Plaintiff, who was carrying a laptop briefcase in his right hand and a cup of tea in his left hand, was fully complying with the directives of Eldorado security, right before reaching the exit, the Plaintiff, without provocation, was jumped from behind by several Eldorado security guards, who jumped upon the Plaintiff, forcing him face-first into the floor and proceeded to choke and strangle the Plaintiff and employ dangerous submission techniques that caused the Plaintiff great pain and threatened his life.

29. Plaintiff was handcuffed and taken to a holding cell against his will within the Eldorado, where he was confined in solitude and forced to wait while handcuffed, injured and in pain, while Eldorado security called the Reno Police Department to come arrest the Plaintiff, and Eldorado security illegally searched the Plaintiff's belongings.

///

///

30. Defendant KELLE HARTER, an officer with the Reno Police Department, arrived on scene, interrogated the Plaintiff for approximately ten minutes before releasing the Plaintiff from his shackles and contacted paramedics to treat the Plaintiff.

31. The Plaintiff provided a copy of his Execuline Corporate Account ID to Defendant HARTER, and then he used his cell phone that was damaged in the attack to call the front desk. He placed the phone on speaker so that the officer could hear and informed the front desk supervisor that she was on speaker phone and a police officer was listening. The front desk supervisor, Lynette, immediately recognized Plaintiff's name and greeted him enthusiastically and inquired if he would be checking into the Eldorado that evening. She even offered to come to the holding cell personally to identify the Plaintiff for the officer, an offer rejected by Defendant HARTER..

32. Despite receiving the information that the Plaintiff was not a trespasser, but an existing customer and corporate account holder, Defendant HARTER neglected to go to the front desk and interview the front desk manager, which was omitted from her report without reviewing any of the information Defendant HARTER had just received which clearly indicated the Plaintiff was not a trespasser, but was an existing customer with a corporate account with Defendant ELDORADO, and without reviewing any surveillance video, Defendant HARTER accompanied the Plaintiff to the hospital and issued the Plaintiff a citation and Notice to Appear at the Municipal Court on a charge of trespass.

33. Plaintiff left the ELDORADO in an ambulance. He was treated at a local hospital for the injuries he sustained at the hands of the Eldorado Security Guards. Plaintiff was also subjected to prosecution on a specious trespass charge based on the acts and omissions of Defendant HARTER.

34. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered exacerbation of his pre-existing condition of his lumbar spine in which he was previously diagnosed with L4-S1 disc herniations, as well as causing injuries to his back, ribs, neck and legs and was placed in physical pain as a result of the unlawful acts of the Defendants herein.

Additionally, the Plaintiff suffered severe emotional distress with physical manifestations as a result of the discriminatory treatment and physical abuse he was subjected to from the Defendants herein. He suffered fear and humiliation as a result of the denial of his constitutional rights under the law and in being singled out in front of other patrons, fellow citizens, and then beaten and attacked when he was complying with the unreasonable demands of ELDORADO security.

35. Plaintiff also incurred substantial economic expenses for having to defend himself in the Municipal Court on the baseless charge of trespass.

36. It if further alleged herein that Defendant ELDORADO has a pattern and practice of racial and ethnic profiling and has repeatedly and unlawfully ejected people from the casino premises, caused physical harm, up to and including death and subjected people to false arrest and imprisonment, under the guise of false allegations of trespassing.

37. If is further alleged that Defendant ELDORADO knew of the acts and omissions of their security guards and either directed them to so behave or simply chose to ignore this unlawful behavior, in any even making an award of punitive damages appropriate.

## FIRST CAUSE OF ACTION

**(42 U.S.C. §2000a - Discrimination in Place of Public Accommodation against Defendant ELDORADO RESORTS, LLC.)**

38. Plaintiff hereby incorporates by reference paragraphs 1-37 of this Complaint as if fully set forth herein.

39. Plaintiff is entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race, color, religion, or national origin.

40. Defendant ELDORADO RESORTS, LLC., is an establishments affecting interstate commerce in that it is lodgings and a facilities principally engaged in selling food for consumption on the premises and is specifically defined by 42 USC §2000a as a place of public accommodation, which includes any inn, hotel, motel, or other establishment which provides lodging to transient

guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence.

41. Defendant ELDORADO RESORTS, LLC, violated the Plaintiff's rights under 42 USC §2000a by unlawfully and without justification ordering that he leave the premises and then brutally assaulting him while he was complying with their demands.

42. Plaintiff is informed and believes and thereupon alleges that the true reason for the treatment he received was based upon his race, African-American, color, black and his religion, Islam.

43. As a direct and proximate result, the Plaintiff suffered damages as set forth herein and in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

**(42 USC §1983 - Unlawful Arrest - Defendant KELLE HARTER, Individually)**

44. Plaintiff hereby incorporates by reference paragraphs 1-43 of this Complaint as if fully set forth herein.

45. Defendant HARTER subjected the Plaintiff to arrest without justification or probable cause.

46. Defendant HARTER detained the Plaintiff at the Eldorado and then followed the ambulance to the hospital where she remained with him until a citation was issued, and up until that time, the Plaintiff was not free to leave, which amounts to a seizure under the 4th amendment of the United States Constitution.

47. The acts and omissions of Defendant HARTER are in violation of the Plaintiff's rights under 42 USC §1983.

48. As a direct and proximate result, the Plaintiff has suffered damages as set forth herein and in an amount to be proved at trial.

///

## THIRD CAUSE OF ACTION

**(42 USC §1983 - Unlawful Arrest - Defendant CITY OF RENO)**

49. Plaintiff hereby incorporates by reference paragraphs 1-48 of this Complaint as if fully set forth herein.

50. Defendant CITY OF RENO is liable under 42 USC §1983 for the unlawful arrest of the Plaintiff by Defendant HARTER because the Defendant CITY OF RENO has a policy and/or custom of arresting and\or citing individuals based merely on the unsupported and/or false allegations of criminal conduct if the allegations of criminal conduct are raised by local businesses.

51. The allegations of criminal misconduct made to Defendant HARTER by representatives to Defendant ELDORADO were clearly and demonstrably false at the time the Plaintiff was unlawfully detained and cited; yet, based on the policy and\or custom set forth above, the Plaintiff was still unlawfully detained and subsequently issued a citation for criminal trespass.

52. The acts and omissions of Defendant CITY OF RENO amount to a violation of Defendant's rights under 42 USC §1983.

53. As a direct and proximate result, the Plaintiff has suffered damages as set forth herein and in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

**(42 USC §1983 - Malicious Prosecution against Defendant KELLE HARTER and Defendant CITY OF RENO)**

54. Plaintiff hereby incorporates by reference paragraphs 1-53 of this Complaint as if fully set forth herein.

///
///
///
///
///

55. Defendants KELLE HARTER and CITY OF RENO prosecuted the Plaintiff with malice and without probable cause and did so in order to deprive plaintiff of his constitutional rights, in that said Defendants did cite and continue with the prosecution of the Plaintiff with full knowledge that the charges against the Plaintiff for criminal trespass were baseless and were motivated by Plaintiff's race, color and religion and failed to investigate the Plaintiff's complaints relating to crimes committed by Eldorado security.

56. The criminal prosecution of the Plaintiff by Defendants HARTER and CITY OF RENO terminated in favor of the Plaintiff.

57. The acts and omissions of Defendants HARTER and CITY OF RENO relating to the malicious prosecution of the Plaintiff violated the Plaintiff's constitutional rights under 42 USC §1983.

58. As a direct and proximate result, the Plaintiff has been damaged as set forth herein and in an amount to be proved at trial.

**FIFTH CAUSE OF ACTION**

**(False Imprisonment - Defendant ELDORADO RESORTS, LLC.)**

59. Plaintiff hereby incorporates by reference paragraphs 1-58 of this Complaint as if fully set forth herein.

60. Defendant ELDORADO RESORTS, LLP, by and though the acts and omissions complained of herein intended to unlawfully confine the Plaintiff within boundaries fixed by the Defendant; specifically, its detention room located in the Eldorado property, and caused him to be handcuffed after an unprovoked beating by several Eldorado security officers, without any legal basis or suspicion to do so.

61. The acts and omissions of the Defendant ELDORADO RESOPRTS, LLC., did directly result in the confinement of the Plaintiff as set forth herein.

///

///

## SIXTH CAUSE OF ACTION

### (Defamation - Defendant ELDORADO RESORTS, LLC.)

62. Plaintiff hereby incorporates by reference paragraphs 1-61 of this Complaint as if fully set forth herein.

63. Defendant ELDORADO RESORTS, LLC., made a false, defamatory and unprivileged statement concerning the Plaintiff to the Reno Police Department, which was made in bad faith, with actual malice and without reasonable grounds to believe the statement concerning the Plaintiff was true and/or in reckless disregard of whether it was false or not.

64. Plaintiff sustained actual or presumed damages as a result of the defamatory statement as set forth herein.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Compensatory damages in the amount of
2. Special damages according to proof;
3. Punitive damages in the amount of ;
4. Attorney's fees an costs; and,
5. For any further relief the Court may consider appropriate under the circumstances.

DATED this 2nd day of September, 2014.

    /s/ Ian E. Silverberg, Esq.
Ian E. Silverberg, Esq., P.C.
Attorney for Plaintiff
ALI AMIR ABDUL-AZIZ