**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALI AMIR ABDUL AZIZ,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ELDORADO RESORTS, LLC, *et al.*,<br><br>　　　　Defendants. | 3:14-cv-00457-RCJ-VPC<br><br>**ORDER** |

This case arises out of an incident that occurred at the Eldorado Hotel and Casino ("Eldorado") in Reno, Nevada. Plaintiff alleges that he was unlawfully arrested, subjected to malicious prosecution, and discriminated against based on his race and religion. Currently before the Court is Defendants City of Reno and Officer Kelle Harter's (collectively "the City of Reno Defendants") Motion to Dismiss (ECF No. 7). Plaintiff has filed a response (ECF No. 9) and the City of Reno Defendants have replied (ECF No. 11). For the reasons contained herein, the motion is GRANTED.

**I.  BACKGROUND**

Plaintiff Ali Amir Abdul Aziz is a Muslim African-American man. (Compl. ¶ 1, ECF No. 1). On September 16, 2012, Plaintiff was watching a professional football game and eating gelato at the Eldorado. (*Id.* ¶ 6). Plaintiff frequented the Eldorado on various occasions and was an "Execuline Member," as his company had an "Execuline Corporate Account." (*Id.* ¶ 7). At

1

some point, Plaintiff noticed that he was being watched by a "collection of security guards." (*Id.* ¶ 10). Eventually, one of those guards approached Plaintiff and asked to see his identification. (*Id.* ¶ 12). Plaintiff refused and asked the guard whether there was any "reasonable articulate suspicion" to demand Plaintiff's identification. (*Id.* ¶ 13). Plaintiff asked further whether he was a suspect in a criminal investigation. (*Id.* ¶ 14). The guard explained that he was allowed to ask for identification and that the guard's supervisor needed to see the identification. (*Id.*). Plaintiff again refused to provide his identification and responded that "perhaps" the guard "should get [his] supervisor." (*Id.*). Once the supervisor arrived, Plaintiff informed him that Plaintiff was not carrying identification, but again asked whether he was a suspect in a criminal investigation. (*Id.* ¶¶ 17–18). The supervisor informed Plaintiff that he "looked like" someone with whom the casino had a problem on a prior occasion. (*Id.* ¶ 19). Plaintiff replied that "it is not a crime to look like someone" and asked whether there were complaints about "a black Muslim man committing crimes in the Eldorado wearing a Pittsburgh Steelers jersey." (*Id.* ¶ 20). When Plaintiff failed to produce any identification, he was informed that he would have to leave the premises. (*Id.* ¶ 21).

As an "Execuline Member," Plaintiff believed that he would be recognized by the personnel at the Eldorado's front desk and suggested that the supervisor and he go speak with someone there to confirm his identity. (*Id.* ¶¶ 23–24). When Plaintiff began to walk towards the escalators leading to the front desk, the supervisor "chest-bumped" Plaintiff and stated that if he did not leave the Eldorado in five seconds, he would be arrested for trespassing. (*Id.* ¶ 25–26). Despite vigorously disagreeing that he was trespassing, Plaintiff alleges that he attempted to comply with the supervisor's instructions to leave the Eldorado when he was suddenly "jumped from behind by several Eldorado security guards." (*Id.* ¶ 28). Plaintiff alleges that he was forced

1  "face-first into the floor" and that the Eldorado security guards employed "dangerous submission
2  techniques" that caused Plaintiff "great pain and threatened his life." (*Id.*).  Plaintiff claims that
3  he was then taken to a holding cell within the Eldorado where he was forced to wait, handcuffed
4  and in pain, while the Eldorado security force called the Reno Police Department and searched
5  Plaintiff's belongings. (*Id.* ¶ 29).

6  Defendant Kelle Harter, an officer with the Reno Police Department, responded to the
7  Eldorado security force's call.  The Complaint alleges that upon her arrival, Officer Harter
8  "interrogated the Plaintiff for approximately ten minutes before releasing the Plaintiff from his
9  shackles and contacted paramedics to treat the Plaintiff." (*Id.* ¶ 30).  During that interrogation,
10 Plaintiff provided Officer Harter with a copy of his Execuline Corporate Account identification
11 and then used his cell phone to call the front desk. (*Id.* ¶ 31).  The phone was set to speaker so
12 that Officer Harter could hear the conversation with Eldorado's front desk personnel.  Plaintiff
13 claims that the front desk supervisor immediately recognized Plaintiff's name and "greeted him
14 enthusiastically," inquiring whether he would be checking into the Eldorado that evening. (*Id.*).
15 Plaintiff alleges that despite receiving this information, Officer Harter failed to investigate
16 further to confirm that Plaintiff was in fact a customer of the Eldorado and not a trespasser. (*Id.*
17 ¶ 32).  Instead, Officer Harter accompanied Plaintiff's ambulance and issued a citation to
18 Plaintiff as well as a notice to appear in the Reno Municipal Court on a trespass charge. (*Id.*).

19 Plaintiff's Complaint includes six causes of action, though only three are relevant to the
20 instant motion.  Plaintiff's second cause of action alleges that Officer Harter unlawfully arrested
21 Plaintiff by detaining him at the Eldorado and then accompanying him to the hospital to issue the
22 citation.  Plaintiff's third cause of action alleges that the City of Reno also unlawfully arrested
23 Plaintiff by harboring a policy or custom of arresting or citing individuals based on unsupported
24

allegations. Plaintiff's fourth cause of action alleges that Officer Harter and the City of Reno subjected Plaintiff to malicious prosecution by requiring him to defend himself in court against the trespass charge. The City of Reno Defendants move to dismiss all three of these causes of action for failure to state claim for which relief can be granted.

## II. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass Rule 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

///

## III.   DISCUSSION

Plaintiff alleges that Officer Harter unlawfully arrested him in violation of the Fourth Amendment of the United States Constitution. Plaintiff also claims that Officer Harter is partially responsible for instigating a malicious prosecution of Plaintiff for a baseless trespass claim. Against the City of Reno, Plaintiff also alleges unlawful arrest and malicious prosecution. Before addressing these claims, however, the Court must first determine whether it may review the documents that the City of Reno Defendants have attached to their motion to dismiss.

### A.  Reviewing Evidence Beyond the Complaint on a Motion to Dismiss

The City of Reno Defendants request that the Court consider various documents attached as exhibits to their motion to dismiss that they assert provide the complete factual picture relevant to Plaintiff's claims. "Generally, the scope of review on a motion to dismiss for failure to state claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Otherwise, the motion to dismiss is converted into a motion for summary judgment and the court must give the non-moving party an opportunity to respond. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). There are exceptions to this rule, however. "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* Further, "[w]hen reading a complaint that incorporates or summarizes documents, [the court] may also consider the documents thus incorporated or summarized." *Rosales-Martinez v. Palmer*, 753 F.3d 890, 897 (9th Cir. 2014). Facts that are judicially noticeable may also be considered by the court. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

1    Here, the City of Reno Defendants attached three exhibits that they argue the Court
2 should consider when ruling on their motion.  The first exhibit is a copy of the Police Report of
3 the incident that gave rise to Plaintiff's claims.  The second exhibit is the citation that Plaintiff
4 was issued regarding the trespass claim.  The third exhibit is a copy of a motion to dismiss that
5 was filed in the Municipal Court of the City of Reno in Plaintiff's trespass case.  The Court finds
6 that only the second exhibit may be properly reviewed at this time.

7    Nowhere in the Complaint does Plaintiff ever reference or mention the Police Report
8 submitted by Officer Harter, nor does he attempt to summarize it.  The facts contained in the
9 Complaint appear to be from Plaintiff's own recollection of what transpired that day, and the
10 Court sees no reason why this exhibit should be consider on a motion to dismiss.  The Court
11 reiterates that the purpose of a 12(b)(6) motion is to test the legal sufficiency of Plaintiff's
12 Complaint. *See Navarro*, 250 F.3d at 732.  The issue is whether the claims are plausible based on
13 the face of the Complaint. *See Iqbal*, 556 U.S. at 678.  Factual disputes that are raised by
14 documents unincorporated and unreferenced by a complaint should be raised at the summary
15 judgment stage and not as part of a defendant's motion to dismiss. *See Ritchie*, 342 F.3d at 907–
16 08.  Therefore, the Court will not consider the Police Report in its evaluation of this motion.

17    Likewise, the Complaint does not reference or refer to the City of Reno's motion to
18 dismiss that it filed in Plaintiff's trespass case.  Although Plaintiff states that the criminal
19 prosecution terminated in his favor, (Compl. ¶ 56), the Complaint does not explain the actual
20 nature of the termination.  Plaintiff neither attempts to summarize the contents of the motion nor
21 does it appear that the motion is central to this case.  Accordingly, the Court will not consider it.

22    The second exhibit, however, may be considered by the Court.  Plaintiff explicitly refers
23 to the citation that he received from Officer Harter more than once in the Complaint. (*See*

24

1  Compl. ¶¶ 32, 55). The citation is arguably central to Plaintiff's claims as it is the reason he was
2  required to appear before the Municipal Court. Finally, there is no legitimate dispute over the
3  citation's authenticity. Plaintiff states that he "specifically contests the authenticity of the copies
4  attached" to the motion, (Pl.'s Opp'n 3, ECF No. 9), but he does not explain his contention.
5  There is no indication on the face of the citation that it is anything other than what the City of
6  Reno Defendants purport it to be—the citation issued to Plaintiff on September 16, 2012. Thus,
7  the Court will consider only the body of the citation and not the attached witness statement,
8  which is not referenced in the Complaint, in ruling on this motion.

9  **B. Second Cause of Action – Unlawful Arrest by Officer Harter**

10  Plaintiff's second cause of action alleges that Officer Harter "subjected [him] to arrest
11  without justification or probable cause. (Compl. ¶ 45). "A claim for unlawful arrest is
12  cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was
13  without probable cause or other justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964
14  (9th Cir. 2001); *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (stating that
15  "[i]t is well established" that an unlawful arrest violates the Fourth Amendment and gives rise to
16  a claim for damages under § 1983). The Complaint does not allege that Officer Harter formally
17  arrested Plaintiff; in fact, he was already detained when she arrived at the Eldorado, and she was
18  the one who ultimately released Plaintiff from his handcuffs. Rather, the Complaint asserts that
19  Officer Harter unlawfully arrested Plaintiff by failing to immediately release him and by
20  accompanying the Plaintiff's ambulance to the hospital. However, the Fourth Amendment
21  protects individuals "against unreasonable searches and seizures" by police officers. *See* U.S.
22  Const. amend. IV. Thus, Plaintiff may allege that Officer Harter made an unlawful seizure even
23  if she never formally arrested him. *See Allen v. United States*, 964 F. Supp. 2d 1239, 1266 (D.
24

Nev. 2013) (implying that a seizure may occur even absent a formal arrest). The Court, therefore, must proceed first by determining whether Plaintiff sufficiently alleges that he was seized by Officer Harter, and second, by determining whether that seizure was reasonable. *See Nelson v. City of Davis*, 685 F.3d 685 F.3d 867, 878 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386 (1989)) ("A seizure results in a constitutional violation only if it is unreasonable.").

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure occurs "when a law enforcement officer, through coercion, 'physical force, or a show of authority, in some way restricts the liberty of a person.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (quoting *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004)); *see also United States v. Redlightning*, 624 F.3d 1090, 1102–03 (9th Cir. 2010) (stating that a person is seized if there is a restraint on the individual's "freedom of movement"); *Allen*, 964 F. Supp. 2d at 1265 (same). "The Supreme Court has said that the 'crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Allen*, 964 F. Supp. 2d at 1265 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

The City of Reno Defendants argue that Officer Harter never arrested Plaintiff since it was the Eldorado security guards that detained and handcuffed him. The Court agrees that the Complaint makes it clear that Plaintiff was detained prior to Officer Harter's arrival on the scene. However, that does not necessarily mean that Officer Harter's subsequent actions could not constitute a seizure under the Fourth Amendment. The Complaint alleges that once Officer

1 Harter arrived, she immediately began questioning Plaintiff in an effort to ascertain his identity.
2 The Court finds that it is plausible that this "approximately 10 minute[]" "interrogation"
3 constitutes a "seizure" because a reasonable person under the circumstances would not likely
4 have felt free to leave. *See Mendenhall*, 446 U.S. at 554.  Moreover, it is plausible that Plaintiff
5 would not have felt at liberty to ignore Officer Harter's presence considering that he was
6 handcuffed and in a holding cell.  Therefore, even though Officer Harter did not personally place
7 the handcuffs on Plaintiff, the Complaint offers sufficient facts that, if true, could support a
8 conclusion that Officer Harter seized Plaintiff in order to question him.

9 Since the Court finds that it plausible that Officer Harter seized Plaintiff, it must next
10 determine whether that seizure was unreasonable.  "Any inquiry into the reasonableness of a
11 seizure requires 'a careful balancing of the nature and quality of the intrusion on the individual's
12 Fourth Amendment interest against the countervailing governmental interests at stake.'" *United*
13 *States v. Enslin*, 327 F.3d 788, 796 (9th Cir. 2003) (quoting *Graham*, 490 U.S. at 396).  Indeed,
14 "[t]he determination of unreasonableness requires [the court] to decide 'whether the totality of
15 the circumstances justified a particular sort of seizure.'" *Nelson*, 685 F.3d at 878 (quoting
16 *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).  In justifying a particular seizure, "the police
17 officer must be able to point to specific and articulable facts which, taken together with rational
18 inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21
19 (1968).

20 Here, the Complaint demonstrates that Officer Harter's response was justified in light of
21 the totality of the circumstances.  Per the Complaint, Officer Harter was summoned to the
22 Eldorado when the Eldorado security guards contacted the Reno Police Department claiming to
23 have detained a trespasser.  When Officer Harter arrived at the Eldorado, she was working from
24

the information that was passed to her by the security guards—namely, that Plaintiff failed to provide identification and that he was trespassing. Based on those specific and articulable facts, Officer Harter began questioning the Plaintiff. She also inspected his Execuline Member identification and listened as a hotel front desk employee recognized Plaintiff's name over the phone and asked if he would be checking into the hotel that evening. It appears from the Complaint that at the conclusion of these events Officer Harter did not delay in releasing Plaintiff from the handcuffs and contacting paramedics to treat his injuries. Thus, Officer Harter's intrusion of Plaintiff's Fourth Amendment rights was minimal and extended only as far as was necessary to resolve the situation. *See Nelson*, 685 F.3d at 878 (explaining that the specific circumstances determine whether a particular seizure was reasonable). The fact that she accompanied Plaintiff to the hospital does not transform an otherwise reasonable seizure into an unreasonable one. Plaintiff does not allege that his liberty was limited because of Officer Harter's continued presence or that his freedom was restricted in any way. Plaintiff was simply traveling to the emergency room. Moreover, the Complaint does not allege that Officer Harter did anything other than leave the hospital once she had issued the citation.

Considering the totality of these circumstances in the light most favorable to Plaintiff, *see Redlightning*, 624 F.3d at 1103, the Court finds that the Complaint fails to demonstrate the plausibility that Officer Harter unreasonably seized Plaintiff. Therefore, the Court GRANTS, without prejudice, the City of Reno Defendants' motion as to the unlawful arrest claim against Officer Harter.

**C. Third Cause of Action – Unlawful Arrest by the City of Reno**

Plaintiff's third cause of action alleges that the City of Reno is liable under 42 U.S.C. § 1983 for Plaintiff's unlawful arrest because "the City of Reno has a policy and/or custom of

1  arresting and/or citing individuals based merely on the unsupported and/or false allegations of

2  criminal conduct if the allegations of criminal conduct are raised by local businesses."[1] (Compl.

3  ¶ 50).  A municipality may be held liable under § 1983 "when execution of a government's

4  policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

5  said to represent official policy, inflicts the injury . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S.

6  658, 694 (1978).  However, it is well established that "[a] § 1983 action against a city fails as a

7  matter of law unless a city employee's conduct violates one of the plaintiff's federal rights." *Orin*

8  *v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001); *see also City of L.A. v. Heller*, 475 U.S. 796,

9  799 (1986) (stating that a municipal corporation cannot be liable under § 1983 when the officer

10 in question "inflicted no constitutional harm").  If a person has not suffered a constitutional

11 injury at the hands of an individual officer, then the fact that a plaintiff alleges a policy or custom

12 of unconstitutional activity "is quite beside the point." *Heller*, 475 U.S. at 799.

13       Here, the Court finds that the Complaint contains insufficient factual contentions to

14 establish the plausibility that Officer Harter unreasonably seized Plaintiff.  Since there was no

15 unreasonable seizure, Officer Harter did not violate Plaintiff's Fourth Amendment rights.  *See*

16 *Nelson*, 685 F.3d at 878.  Accordingly, Plaintiff's contention that the City of Reno violated the

17 Fourth Amendment by furthering an unlawful policy or custom necessarily fails as a matter of

18 law.  *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (stating that a

---

[1] The City of Reno Defendants argue that the causes of action alleged against the City of Reno Police Department should be dismissed because a department of the municipal government may not be sued by departmental name. (Defs.' Mot. to Dismiss 5, ECF No. 7).  This is correct. *See Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (holding that "the State of Nevada has not waived [sovereign] immunity on behalf of its departments of political subdivisions").  The Complaint is inconsistent between naming the City of Reno Police Department and the City of Reno as the relevant defendant in this case.  The caption of the Complaint, as well as the "Jurisdictional Allegations" section, names "City of Reno Police Department" as a party rather than the City of Reno itself. (*See* Compl. ¶ 3).  However, the third and fourth causes of action name the City of Reno as the accused defendant. (*See* Compl. ¶¶ 50, 55).  Despite this sloppy drafting, the Court believes that the City of Reno is the party that Plaintiff intended to name in the Complaint.  There is no argument that an improper party was served or that the City of Reno has been prejudiced in some way because of Plaintiff's misnomer.  The Court, therefore, finds that Plaintiff's causes of action should not be dismissed on this basis.  Further, the Court does find it necessary for Plaintiff to amend his Complaint to correct only this mistake.

1 municipality may not be held liable under § 1983 where no injury or constitutional violation has
2 occurred). Therefore, the City of Reno Defendants' motion as to this claim is also GRANTED
3 without prejudice.

### D. Fourth Cause of Action – Malicious Prosecution

Plaintiff's fourth cause of action alleges that the City of Reno Defendants prosecuted Plaintiff "with malice and without probable cause and did so in order to deprive plaintiff of his constitutional rights . . . with full knowledge that the charges against Plaintiff for criminal trespass were baseless and were motivated by Plaintiff's race, color, and religion . . . ." (Compl. ¶ 55). The elements of malicious prosecution under Nevada law are: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) favorable termination of the prior criminal proceedings; and (4) damages." *Lester v. Buchanen*, 929 P.2d 910, 912 (Nev. 1996). "A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." *LaMantia v. Redisi*, 38 P.3d 877, 879–80 (Nev. 2002). The Complaint alleges that Officer Harter accompanied Plaintiff to the hospital in order to deliver the citation. It is plausible, then, that she contributed to initiating the criminal proceedings against Plaintiff. Plaintiff also alleges that the City of Reno prosecuted the case, which required him to appear and defend himself. Accordingly, it plausible that the City of Reno actively participated in the continuation of the trespass proceeding. Thus, the Court must determine whether the Complaint presents sufficient facts to support the plausibility of the elements of malicious prosecution.

Whether probable cause existed to initiate the criminal proceeding is an objective standard. *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997). "Under this test, it is for the court to decide whether a reasonable attorney would have considered the prior action legally tenable—

12

ignoring any subjective factors such as the attorney's expertise and belief." *Id.* The Court finds that the facts alleged in the Complaint all but admit that the City of Reno Defendants had probable cause to initiate the criminal proceeding for trespass. Under Nevada law, a person unlawfully trespasses if he or she "willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass." N.R.S. § 207.200(1)(b). "A sufficient warning against trespassing . . . is given . . . [b]y the owner or occupant of the land or building making an oral or written demand to any guest to vacate the land or building." N.R.S. § 207.200(2)(d).

In this case, Plaintiff was initially approached by the Eldorado security guards because they believed that he resembled another individual who had given them problems in the past. (Compl. ¶ 19). Plaintiff was asked multiple times for identification so that the security guards could confirm his identity. (Compl. ¶¶ 13, 15, 21). Plaintiff declined to provide the guards with identification. (Compl. ¶¶ 13–18). Plaintiff was informed that if he did not provide identification, he would need to leave the premises. (Compl. ¶ 21). Plaintiff continued to argue with the security guards, though he made his way towards an exit. (Compl. ¶¶ 25–27). When Plaintiff did not exit the building as quickly as the security guards would have liked, he was forcefully detained and handcuffed. (Compl. ¶ 28; *see also* Citation, ECF No. 7-2 (stating that Plaintiff "did not leave when asked to by Eldorado security")). These facts, even in the light most favorable to Plaintiff, demonstrate that a reasonable attorney could have considered the trespass action tenable. On the face of the Complaint, it appears that Plaintiff willfully remained in the Eldorado after being asked to leave by the security guards. The guards, as representatives of the Eldorado, warned Plaintiff orally that if he did not leave, he would be trespassing.

Nevertheless, Plaintiff continued to argue that he should not have to show his identification, which led to his detainment.

Plaintiff claims that he was attempting to exit the building when the Eldorado security guards detained him, and therefore was attempting to comply with the law. (*See* Compl. ¶¶ 27–28). This issue, however, goes more towards the merits of the trespass claim rather than whether the City of Reno Defendants had probable cause to issue the citation and initiate criminal proceedings. Because the Complaint itself demonstrates that the City of Reno Defendants had reason to believe Plaintiff trespassed, the Court finds that Plaintiff fails to demonstrate the plausibility that no probable cause existed. Since there was probable cause to issue the citation and initiate the criminal proceeding, "no further inquiry is required as to the other elements of an action for malicious prosecution." *Dutt v. Kremp*, 894 P.2d 354, 359 (Nev. 1994), *overruled on other grounds by LaMantia*, 38 P.3d at 880. Therefore, the motion is GRANTED with prejudice as to this cause of action.

## CONCLUSION

IT IS HEREBY ORDERED that the City of Reno Defendants' Motion to Dismiss (ECF No. 7) is GRANTED. Plaintiff is given leave to amend his Complaint as to the second and third causes of action, but the fourth cause of action is dismissed with prejudice.

IT IS SO ORDERED.

Dated: December 18, 2014

_____
ROBERT C. JONES
United States District Judge